UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEVIN LAMAR BLAKE,

          Plaintiff,

v.

                                Case No. 3:23-cv-341-MMH-PDB

WHITE, et al.,

          Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Kevin Lamar Blake, an inmate of the Florida penal system, initiated this action, in forma pauperis, by filing a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Doc. 1; Complaint). Blake is proceeding on a Second Amended Complaint (Docs. 13 & 13-1; SAC & SAC Attachment)[1] against four Defendants – Officer White, Officer H. Carey, Sergeant R. Covey, and Officer E. Baker.[2] SAC at 2-3. He asserts claims of sexual harassment, failure to intervene, excessive force, retaliation, deliberate indifference to

_____

[1] Blake's factual allegations are set forth on page 5 of Doc. 13 (SAC) and pages 1 and 2 of Doc. 13-1 (SAC Attachment). The Court generally refers to Docs. 13 and 13-1 collectively as "SAC" and will specifically cite to each when appropriate.

[2] The Court directs the **Clerk** to correct the docket to reflect the accurate spelling for the following listed Defendants – "H. Coovey" to "H. Carey" and "E. Becker" to "E. Baker."

conditions of confinement, and "hinderance of observation of religion." Id. at 3-4.

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 19; Motion). Blake filed a Response in opposition to the Motion (Doc. 23; Response). The Motion is ripe for review.

## II. Blake's Allegations[3]

In his SAC, Blake alleges that on January 16, 2023, while housed at Florida State Prison, Defendant White denied him his Religious Diet Program (RDP) lunch bag because Blake "refused to step to the back of his cell and show [Defendant White] his penis or spread his buttock[]." SAC at 5. Blake asserts he immediately told Defendant Carey about Defendant White's actions and twice asked Defendant Carey to help, but Defendant Carey "deliberately disregarded" Blake's pleas and refused to intervene. Id. According to Blake, officials never provided him with his lunch bag that day. Id. He asserts that following these events, he filed a sexual assault complaint under the Prison Rape Elimination Act (PREA). Id.

---

[3] In considering Defendants' Motion, the Court must accept all factual allegations in the SAC as true, consider the allegations in the light most favorable to Blake, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the SAC, and may well differ from those that ultimately can be proved.

According to Blake, on January 22, 2023, Defendant Covey came to Blake's cell to investigate the January 16, 2023 incident and get a witness statement. SAC Attachment at 2. Blake contends he requested that Defendant Covey move him to another wing of the facility to "ensure his safety because he feared retaliation from" Defendants White and Carey, but Defendant Covey "refused to intervene" to prevent further incidents even though "it was in his power and ability to do so." Id.

Blake further alleges that on January 23, 2023, Defendant Baker escorted him to the law library, and as he was exiting his cell, Defendant Carey and Officer Howard entered the cell and stated, "Oh, I've been waiting for you to come out. I got you now." Id. When Blake returned to his cell following his call-out, he noticed his cell was in "complete disarray" and his RDP breakfast bag that he was waiting to eat after his fast was missing. Id. Blake asserts that Defendant Carey immediately took responsibility for the condition of Blake's cell, explaining he did it because Blake's mother had contacted the facility about the January 16, 2023 incident involving Defendants White and Carey. Id. Officials then removed Blake's body restraints and secured his cell door. Id. Blake asserts that Defendant Baker then removed Blake's left-hand restraint and as Defendant Baker tried to remove the right-hand restraint, Blake "snatched his arm back through the aperture." Id. According to Blake, Defendant Baker pulled on the restraints, causing Blake to scrape his arm. Id.

He asserts he and Defendant Baker "struggled with each other" until Defendant Carey intervened and sprayed Blake with chemical agents, burning Blake's skin and eyes and causing him to choke and cough. Id.

Blake maintains that Lieutenants Young and Morris then escorted him to the decontamination shower. Id. He advised Young that although he did not want to go to medical, he wanted officials to document his injuries but he "doubts" that Nurse Mosley documented anything. Id. Blake contends that unnamed officials eventually escorted him to Bravo Wing and placed him in a cell with chemical agents all over the walls. Id. According to Blake, for the next few days, unnamed officials did not provide him with "healthy comfort items, sheets, blankets, [a] mattress, pillow, or his property" even though he was never placed on property restriction. Id. He received his personal property "several weeks later" and received "proper laundry items" "several days" later. Id. Blake contends Defendant Baker issued a disciplinary report on January 25, 2023, for battery/attempted battery on an officer, and officials held a disciplinary hearing on February 1, 2023, which Blake later appealed. Id.

Blake alleges Defendants' actions violated his rights under the First Amendment (retaliation and religious freedom) and Eighth Amendment (excessive force, failure to intervene, and sexual harassment). SAC at 3-4. The Court also construes Blake's allegations about unnamed officials moving him to a cell covered in chemical agents and denying him "healthy comfort items"

4

as an Eighth Amendment claim of deliberate indifference to the conditions of his confinement. Blake contends Defendant Baker's use of force resulted in Blake suffering "several scars" and the use of chemical agents, cell extraction, property restriction, and retaliation has caused Blake to experience paranoia and sleep deprivation. Id. at 5. As relief, he requests compensatory and punitive damages. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-

69 (11th Cir. 2014) (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia</u>, 132 F.3d

1359, 1369 (11th Cir. 1998), <u>overruled in part on other grounds as recognized</u>

<u>in</u> <u>Randall</u>, 610 F.3d at 709).

## IV. Defendants' Motion

In their Motion, Defendants argue the following: (a) Blake failed to

exhaust his administrative remedies; (b) Blake fails to state a claim under the

First Amendment; (c) Blake fails to state a claim under the Eighth

Amendment; (d) they are entitled to qualified immunity; (e) Blake is not

entitled to compensatory damages; and (f) Blake is not entitled to punitive

damages. <u>See generally</u> Motion.

### a. Exhaustion

Defendants argue Blake failed to exhaust his administrative remedies

because officials did not approve any informal or formal grievances regarding

the January 16, 2023 allegations. Motion at 10. They acknowledge that Blake

filed one direct emergency grievance containing assertions about the January

16, 2023 sexual harassment, denial of his RDP lunch, and Defendant Carey's

failure to intervene. <u>Id.</u> But, according to Defendants, the Bureau of Inmate

Appeals did not decide the direct grievance on the merits, but instead

"approved" it only to the extent that it forwarded his allegations "for action by

the Warden of the institution" and thus it did not waive any procedural defects.

<u>Id.</u> at 10-11. Defendants also argue that Blake filed no informal, formal, or

7

grievance appeal containing allegations about his January 16, 2023 claims of excessive force and deliberate indifference. Id. at 11-13. In support of their argument, Defendants provide the declarations of formal grievance coordinator Phyllis Rodriguez, informal grievance coordinator C. Davis-Cotton, and operation analyst Lawanda Sanders-Williams, as well as direct emergency grievance (log # 23-6-02961) and the Secretary's response thereto. See Docs. 19-1 through 19-3.

Blake argues that he exhausted his administrative remedies for all his claims. Response at 3. According to Blake, the Secretary's approval of direct emergency grievance (log # 23-6-02961) exhausted his administrative remedies for his claims about the January 16, 2023 incident. Id. As to his claims for excessive force and deliberate indifference, Blake maintains that the events giving rise to those claims occurred on January 23, 2023, not January 16, 2023, and "he filed numerous grievances [about those allegations] but they were either lost, misfiled, not processed, or otherwise thrown away." Id.

The Prison Litigation Reform Act (PLRA) requires Blake to exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before

challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, Blake need not "specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211).[4] Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

> opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be

10

unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Blake] has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the

11

parties have had sufficient opportunity to develop the record.[5] <u>Bryant</u>, 530 F.3d at 1376; <u>see also</u> <u>Jenkins v. Sloan</u>, 826 F. App'x 833, 838-39 (11th Cir. 2020).

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The Florida Department of Corrections (FDOC) provides an internal grievance procedure for its inmates. <u>See</u> Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. <u>See</u> Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007.

---

[5] In an unpublished decision, the Eleventh Circuit suggests that a pro se plaintiff must receive notice of his opportunity to develop the record on exhaustion. <u>See</u> <u>Kinard v. Fla. Dep't of Corr.</u>, No. 24-10359, 2024 WL 4785003, at *7 (11th Cir. Nov. 14, 2024) (per curiam). Here, the Court notified Blake that he had forty-five days to respond to any motion to dismiss. <u>See</u> Order (Doc. 15) at 3. Blake responded to the Defendants' Motion (Doc. 23) and addressed the exhaustion argument by relying on the grievance records attached to Defendants' Motion. He does not suggest that he requires additional discovery. As such, Blake has received notice and an opportunity to develop the record on exhaustion.

However, the ordinary three-step procedure does not always apply. For example, an inmate may skip the informal and formal grievance steps and file a direct emergency grievance with the Office of the Secretary, if the issue involves an emergency, reprisal, protective management, admissible reading material, release date calculations, banking issues, sexual abuse committed by the warden, or HIPAA violations. Fla. Admin. Code r. 33-103.007(3)(a). When a prisoner files a direct emergency grievance with the Secretary, he must do so "within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred." Fla. Admin. Code r. 33-103.011(d).

Here, accepting Blake's view of the facts as true, the Court finds dismissal of the claims against Defendants for lack of exhaustion is not warranted at the first step of <u>Turner</u>. Thus, the Court proceeds to the second step of the two-part process in which the Court considers the parties' disputes about exhaustion and makes findings of fact.

In resolving those disputes, the Court first addresses Blake's efforts to exhaust his January 16, 2023 claims of sexual harassment, denial of his RDP lunch bag, and failure to intervene. The evidentiary material shows that on January 17, 2023, Blake submitted to the Secretary a direct emergency grievance (log # 23-6-02961), which stated in pertinent part:

Direct grievance

13

> Issue: PREA/Sexual Abuse Grievance/Complaint Against Staff/8th Amendment Right Violation/14th Amendment Right Violation
>
> Note: Due to the nature and urgency of this incident I am filing this grievance directly to the Central Office.
>
> Explanation: On Monday January 16, 2023 starting . . . between 10:30 am [and] continuing on between 12:00 noon-12:30pm ending in the grievant being sexually harassed and denied the right to receive his R.D.P. (Religious Diet Program) lunch bag by Ofc. White, whom sexually harassed Grievant by requesting to either see his penis or to spread his buttock[]. This le[]d to Grievant being refused the opportunity to receive his food because he refused to step to the back window and show Ofc. White his penis or spread his buttock[]. Grievant spoke with Sgt. H. Carey to provide intervention against Ofc. White's sexual approaches and to provide him his food. Instead of Sgt. H. Carey providing intervention[,] he allowed Ofc. White to not feed the Grievant. Grievant asserts that this is a direct violation of . . . his 1st, 8th, and 14th Amendment rights . . . .

Doc. 19-3 at 2. On January 31, 2023, the Secretary's Office responded to the

direct grievance (log # 23-6-02961) as follows:

> Your request for administrative review has been received and evaluated. Your PREA allegations have been forwarded to the Warden at your facility in order that immediate action regarding your allegations may be taken.
>
> Based on the forgoing, your appeal is approved in as much as action was taken to affect immediate action on your allegations. This does not necessarily substantiate your allegations.

Doc. 19-3 at 1.

14

The parties do not dispute the contents of Blake's direct emergency grievance (log # 23-6-02961) or the Secretary's response/approval, and they also agree that Blake did not otherwise proceed through the FDOC's standard three-step process for the January 16, 2023 events. However, they dispute whether Blake's direct emergency grievance (log # 23-6-02961) and the Secretary's response were sufficient to exhaust those claims. The Court finds that they were.

Notably, courts have repeatedly recognized that when the Secretary marks an "emergency grievance" as "approved" and refers it for investigation, the inmate has sufficiently exhausted his administrative remedies  See, e.g., Hardin v. Jones, 3:18-cv-3-J-32-JBT, 2020 WL 325649, at *3-4 (M.D. Fla. Jan. 21, 2020) (refusing to dismiss for lack of exhaustion because the prisoner filed an emergency grievance that was referred to the inspector general); Luckey v. May, 5:14-cv-315-MW-GRJ, 2016 WL 1128426, at *9-10 (N.D. Fla. Feb. 17, 2016) (finding that a prisoner's "emergency grievance exhausted his administrative remedies" because it was deemed "approved" and "referred to the Office of the Inspector General");[6] see also Tierney v. Hattaway, 3:20-cv-

_____

[6] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

5738/LAC/ZCB, 2022 WL 18159995, at *2 (N.D. Fla. Dec. 9, 2022) (concluding that prisoner sufficiently exhausted when his grievance was "approved" and referred to the inspector general). Indeed, when a grievance has been "approved" in any circumstance, there is nothing more for an inmate to do. Of import here, the Secretary did not refuse the grievance or direct Blake to resubmit it at the appropriate level. It was accepted as an emergency and addressed on the merits. Given the Secretary "approved" Blake's direct emergency grievance, it would have been counterintuitive for him to otherwise proceed through the three-step grievance procedure. See Fulmore v. Leigh, 8:12-cv-1705-T-30-EAJ, 2014 WL 2441864, at *7 (M.D. Fla. May 30, 2014) (explaining that the administrative exhaustion doctrine does not "require[ ] inmates to undertake additional action upon approval of a grievance in order to complete the review process"). And the Court finds no difference between the Secretary's decision to refer Blake's direct grievance to the Warden for investigation rather than the Office of the Inspector General. Thus, Blake exhausted his January 16, 2023 claims for sexual assault, denial of his RDP lunch, and failure to intervene.

Next, the Court considers Blake's efforts to exhaust his claims of excessive force and deliberate indifference. The parties first disagree about the date these claims arose. Defendants provide the declarations of Davis-Cotton and Rodriguez who state that officials did not approve any informal or formal

16

grievances "related to the January 16, 2023 claims of excessive use of force" or "deliberate indifference." Doc. 19-1 at 1-2. They also rely on the declaration of Sanders-Williams who attests that "Blake did not file any proper appeals regarding the January 16, 2023 claims of excessive use of force[] and deliberate indifference." Doc. 19-2 at 1.

But in his SAC and Response, Blake asserts that his claims of excessive force and deliberate indifference arose from events that occurred on January 23, 2023, thus his approved direct emergency grievance (log # 23-6-02961), which he submitted on January 17, 2023, understandably did not contain allegations about those claims. Response at 3. According to Blake, after January 23, 2023, he submitted "numerous grievances" about those events, "but they were either lost, misfiled, not processed, or otherwise thrown away." Id. To that end, he appears to argue that officials rendered the grievance process for those claims unavailable, relieving him of any obligation to complete the procedure for his excessive force and deliberate indifference claims.

Contrary to Defendants' position, the record here shows that Blake's claims of excessive force and deliberate indifference arose from events that Blake alleges occurred on January 23, 2023. Thus, the declarations and evidence Defendants present to dispute exhaustion of a January 16, 2023 excessive force or deliberate indifference claim are irrelevant and not

17

dispositive of Blake's exhaustion efforts for the January 23, 2023 events at issue here. As such, Defendants have not shown that Blake failed to exhaust his administrative remedies as to those claims, and Defendants' Motion is due to be denied as to their exhaustion argument.

### b. First Amendment

<u>Retaliation</u>

In their Motion, Defendants argue Blake fails to state a plausible claim of retaliation against Defendants White and Carey. Motion at 14. "The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." <u>O'Bryant v. Finch</u>, 637 F.3d 1207, 1212 (11th Cir. 2011) (citation omitted). It is firmly established that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." <u>Smith v. Mosley</u>, 532 F.3d 1270, 1276 (11th Cir. 2008). An inmate may pursue a cause of action against a prison official who retaliates against him for engaging in that protected speech. <u>Id.</u>

> To establish a retaliation claim, a prisoner must demonstrate "that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal quotation marks and citation omitted). [A plaintiff] can prevail on a retaliation claim if "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's allegedly

> retaliatory conduct would likely deter a person of
> ordinary firmness from engaging in such speech; and
> (3) there is a causal relationship between the
> retaliatory action and the protected speech." Smith v.
> Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).

Williams v. Radford, 64 F.4th 1185, 1192 (11th Cir. 2023). As to the third

prong, a plaintiff must do more than make "general attacks" upon a

defendant's motivations and must articulate "affirmative evidence" of

retaliation to show the requisite motive. Crawford-El v. Britton, 523 U.S. 574,

600 (1998) (citations omitted). "In other words, the prisoner must show that,

as a subjective matter, a motivation for the defendant's adverse action was the

prisoner's grievance or lawsuit." Jemison v. Wise, 386 F. App'x 961, 965 (11th

Cir. 2010) (per curiam) (citation omitted).

Here, Blake's retaliation claims are based on two sets of circumstances.

First, he asserts that on January 16, 2023, Defendant White refused to give

Blake his RDP lunch bag in retaliation for Blake's refusal to expose his

genitals. SAC at 5. However, in the prison context, the purpose of a First

Amendment retaliation claim is to protect a prisoner's right to advise prison

administrators about confinement conditions, and a prisoner may maintain a

claim of retaliation by alleging that an official's actions were "the result of [the

inmate] having filed a grievance concerning th[ose] conditions of his

imprisonment." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). The

Eleventh Circuit has not extended those protections to an inmate's verbal

refusal to submit to a guard's sexual advances. See Charest v. Sunny-Aakash, LLC, No. 8:16-cv-2048-T-30JSS, 2017 WL 4169701, at *6 (M.D. Fla. Sept. 20, 2017) (acknowledging the Eleventh Circuit's undecided position and citing LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 389 (5th Cir. 2007) (holding that a single, express rejection of sexual advances does not constitute "protected activity" for purposes of a retaliation claim)).

In his Response, Blake asserts, for the first time, that Defendant White refused to provide him with his RDP lunch immediately after Blake verbally threatened to submit a PREA complaint against Defendant White. Response at 3. However, Blake was twice afforded leave to file an amended complaint (see Docs. 10, 12), and he never asserted these facts about Defendant White's purported motive to deny Blake of his RDP lunch. Blake cannot survive a motion to dismiss by expanding factual allegations for the first time in his response to a motion. See Regalado v. Dir., Ctr. for Disease Control, No. 22-12265, 2023 WL 239989, at * 1 (11th Cir. Jan. 18, 2023) (affirming dismissal of § 1983 complaint as moot where plaintiff's jurisdictional claims "were never properly before the district court as he only raised them in opposition to the motion to dismiss and did not seek leave to amend his complaint"); Huls v. Llabona, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (holding that an argument raised for the first time in response to a motion to dismiss, instead of in an amended complaint, was not properly raised before the district court and would

not be considered on appeal); <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."). Thus, Blake fails to state a plausible retaliation claim against Defendant White.

Blake's second retaliation claim is that on January 23, 2023, while Blake was in the law library, Defendant Carey trashed his cell and took Blake's RDP breakfast bag in retaliation for Blake's mother "contact[ing] the institution and inform[ing] them that he and Ofc. White refused to feed him on January 16, 2023 after Ofc. White sexually harassed him." SAC Attachment at 2. Viewing these allegations in the light most favorable to Blake, as the Court must, and assuming Blake's mother's complaint to prison officials can be considered "protected speech" for purposes of a First Amendment claim, Blake fails to show that Defendant Carey's actions of taking Blake's meal and leaving his cell is "disarray" were so adverse as to deter a person of ordinary firmness from engaging in such speech. <u>See, e.g.</u>, <u>McDuf v. Barlow</u>, No. 3:17cv909-LC-HTC, 2019 WL 2016557, at *6 (N.D. Fla. Apr. 12, 2019), <u>rep. & recommendation adopted by</u> 2019 WL 2010709, at *1 (N.D. Fla. May 7, 2019) (finding that the plaintiff could not show that the defendant's "alleged retaliatory conduct of denying him a single meal would likely deter a person of ordinary firmness

from exercise of First Amendment rights").[7] As such, Blake fails to state a plausible retaliation claim against Defendant Carey, and Defendants' Motion is due to be granted as to this argument.

Free Exercise Clause

Defendants argue that Blake fails to state a First Amendment claim under the Free Exercise Clause. Motion at 16-18. According to Defendants, Blake fails to allege facts showing the denial of his RDP meals posed a substantial burden on his religious beliefs. Id. at 17.

The Free Exercise Clause prevents the government from discriminating against an individual's exercise of religious beliefs or conduct those religious beliefs motivate. See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993) ("At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons."). To establish a First Amendment claim under the Free Exercise

---

[7] The Court takes judicial notice of its own records, and of public records within its own files. See Cash Inn of Dade, Inc. v. Metro. Dade Cnty., 938 F.2d 1239, 1243 (11th Cir. 1991) (district court may take judicial notice of public records within its files relating to particular case before it or to related cases). In doing so, the Court recognizes that after the January 23, 2023 events, Blake continued to file complaints, which shows that Defendant Carey's actions would not deter a person of ordinary firmness from exercising his First Amendment rights. Notably, after Defendant Carey's alleged conduct on January 23, 2023, Blake filed at least four other civil rights cases. See Nos. 3:23-cv-660-MMH-J_T; 3:23-cv-682-BJD-MCR; 3:23-cv-1371-HES-J_T; 3:23-cv-399-BJD-MCR. And Blake likewise admits that he submitted "numerous grievances" after January 23, 2023. Response at 3.

Clause, a plaintiff must show that the defendant imposed a "substantial burden" on his sincerely held religious beliefs. See GeorgiaCarry.Org v. Georgia, 687 F.3d 1244, 1256 (11th Cir. 2012) ("First Amendment Free Exercise Clause precedent is clear: a plaintiff must allege a constitutionally impermissible burden on a sincerely held religious belief to survive a motion to dismiss."); see also Hoever v. Belleis, 703 F. App'x 908, 912 (11th Cir. 2017); Wilkinson v. GEO Grp., Inc., 617 F. App'x 915, 917 (11th Cir. 2015); Hernandez v. Comm'r, 490 U.S. 680, 699 (1989) ("The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice[.]"). A "substantial burden" is defined as something more than an incidental effect or inconvenience on religious exercise. It "is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct." Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004); see also Hoever, 703 F. App'x at 912 ("[A] substantial burden occurs if the conduct complained of completely prevents the individual from engaging in religiously mandated activity, or . . . requires participation in an activity prohibited by religion and, at a minimum, must have something more than an incidental effect on religious exercise." (internal quotations and citation omitted)).

Here, Blake fails to state a plausible Free Exercise claim against Defendants White and Carey. He bases his claims on (1) Defendant White's January 16, 2023 refusal to provide Blake with his RDP lunch after Blake declined to expose his genitals, and (2) Defendant Carey's January 23, 2023 destruction of Blake's cell and the taking of his RDP breakfast after Blake's family contacted the facility. But even viewing these allegations in the light most favorable to Blake, he has failed to plausibly suggest that Defendant White's and Defendant Carey's interference with his receipt of RDP meals on two days substantially interfered with his ability to practice his religious beliefs. See, e.g., Moore v. Nunn, No. 3:19-cv39/MCR/EMT, 2019 WL 7485332, at *8 (N.D. Fla. Aug. 27, 2019), rep. & recommendation adopted by Moore v. Nunn, 2020 WL 61044, at *1 (N.D. Fla. Jan. 6, 2020) (finding the plaintiff's allegation that the defendant "defiled" five meals over a five-day period did not state a First Amendment Free Exercise of Religion claim). Blake does not allege or suggest that the purpose of Defendant White's and Defendant Carey's actions was to hinder Blake's religious practice. Instead, he plainly asserts Defendants White's and Carey's denial or taking of his RDP meal bags were in retaliation for actions wholly unrelated to Blake's religion. Thus, Blake has failed to state a plausible First Amendment claim under the Free Exercise Clause, and Defendants' Motion is due to be granted as to this argument.

24

### c. Eighth Amendment

<u>Sexual Harassment and Failure to Intervene</u>

Defendants argue that Blake fails to state a sexual harassment claim under the Eighth Amendment because he did not assert that Defendant White's comments caused Blake to suffer any injuries. Motion at 26. Defendants also argue that Blake fails to state a failure to intervene claim against Defendants Carey and Covey because he failed to allege facts showing they were subjectively aware that Defendant White's verbal threats posed a substantial risk of harm. <u>Id.</u> at 20.

"[S]evere or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." <u>Sconiers v. Lockhart</u>, 946 F.3d 1256, 1267 (11th Cir. 2020). But no binding precedent has established that a correctional officer's verbal threats of sexual harassment, without more, rise to the level of a constitutional violation. <u>Watkins v. Azael</u>, No. 22-11648, 2023 WL 4422527, at *7 (11th Cir. July 10, 2023). Indeed, "verbal taunts . . . [h]owever distressing" cannot establish a claim under the Eighth Amendment. <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989)). And a "prison officers' threats that were never carried out [are likewise] insufficient to state a constitutional violation." <u>Hernandez v. Fla. Dep't of Corr.</u>, 281 F. App'x 862, 866 (11th Cir. 2008). To that end, the Eleventh Circuit, in an unpublished opinion, explained that "given the binding precedents concerning verbal statements (in a single

incident) without accompanying actions, [it] cannot say that [verbal sexual harassment]" amounts to conduct that violates the constitution. <u>Watkins</u>, 2023 WL 4422527, at *8 (finding verbal sexual threats did not present exceptionally rare case that would give a reasonable correctional officer fair notice of its illegality for purposes of qualified immunity).

Here, Blake does not allege that Defendant White sexually assaulted him. Rather, his allegations involve Defendant White's verbal taunts and sexual comments. Defendant White's alleged statements, "though unacceptable and unrelated to any legitimate governmental objective, [are] the type of verbal harassment or taunting that is not actionable" under the Eighth Amendment. <u>See</u> <u>In re: Eric Watkins Litigation</u>, 829 F. App'x 428, 431 (11th Cir. 2020); <u>see also</u> <u>Allen v. McDonough</u>, 4:07-CV-469/RH/GRJ, 2011 WL 4102525, at *6 (N.D. Fla. Aug. 17, 2011) (explaining that "sexual comments and gestures to [the p]laintiff . . . do not rise to the level of a constitutional violation under the Eighth Amendment"); <u>Miller v. Johnson</u>, 2:20-cv-458, 2023 WL 5358606, at *4 (M.D. Ala. July 26, 2023) (explaining that "sexual harassment devoid of any contact or touching does not violate the Eighth Amendment"). Thus, Blake has failed to state a plausible Eighth Amendment sexual harassment claim against Defendant White and Defendants' Motion is due to be granted as to this argument.

To that end, since the Court finds that Defendant White's verbal sexual harassment, while unacceptable, did not amount to a constitutional violation, Blake's claim that Defendant Carey failed to intervene during Defendant White's alleged sexual harassment must also fail. See, e.g., Mobley v. Palm Beach Cnty. Sheriff Dep't,783 F.3d 1347, 1357 (11th Cir. 2015) ("[A] police officer has no duty to intervene in another officer's use of force when that use of force is not excessive."); Kinght v. Gray, No. 3:19-cv-779-BJD-JBT, 2024 WL 1174708, at *22 (M.D. Fla. Mar. 19, 2024) (determining that because the plaintiff failed to establish a claim of sexual abuse, his claim that another officer failed to intervene in the abuse also failed). Likewise, because the Court has found Blake failed to state a retaliation claim regarding Defendant White's January 16, 2023 refusal to provide Blake's RDP lunch, Blake also fails to adequately allege that Defendant Carey failed to intervene in that conduct.

Finally, Blake claims that Defendant Covey failed to intervene in Defendant White's sexual harassment because Defendant Covey declined to move Blake to another prison wing during his January 22, 2023 investigation. But, even if Defendant White's comments amounted to a constitutional violation, a failure to intervene claim requires that Defendant Covey be present and capable of intervening at the time of the constitutional violation. And Blake's allegations that Defendant Covey failed to intervene days after Defendant White's actions are insufficient to state a claim for relief. See, e.g.,

Hadley v Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008) ("[I]t must [ ] be true that the non-intervening officer was in a position to intervene yet failed to do so."). Thus, Blake fails to state a failure to intervene claim against Defendants Carey and Covey, and Defendants' Motion is due to be granted as to this argument.

Excessive Force

Defendants argue that Blake fails to state an excessive force claim against Defendants Baker and Carey because, in accordance with the FDOC's policy, Blake's resistance to the removal of his hand restraints made it necessary for Defendant Baker to apply physical force and for Defendant Carey to use chemical agents. Motion at 24. They also assert that Defendants Baker and Carey used no more force than necessary to restore discipline and security. Id. at 25.

In Sconiers v. Lockhart, 946 F.3d 1256, 1265 (11th Cir. 2020), the Eleventh Circuit reviewed "the principles applicable to Eighth Amendment excessive-force" claims. In doing so, the court instructed:

> The Eighth Amendment, among other things, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. As the Supreme Court has explained, "the unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as proscribed "cruel and unusual punishment." Hudson v. McMillian, 503 U.S. 1, 5 (1992). Nevertheless, the Supreme Court has instructed that what rises to the level of an "unnecessary and wanton infliction of pain"

28

differs based on the type of Eighth Amendment violation alleged. Id.

Since [the plaintiff] asserts excessive-force . . . claims, "the core judicial inquiry" requires [the Court] to consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37 (citation and quotation marks omitted).[8] This standard requires a prisoner to establish two elements – one subjective and one objective: the official must have both "acted with a sufficiently culpable state of mind" (the subjective element), and the conduct must have been "objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8 (cleaned up).

With respect to the subjective element, "to have a valid claim on the merits of excessive force in violation of [the Eighth Amendment], the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002); see also Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010).

As for the objective component of an excessive-force violation, it focuses on whether the official's actions were "harmful enough," Hudson, 503 U.S. at 8, or "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991), to violate the Constitution. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins, 559 U.S. at 37. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 37-38. Instead, the Eighth Amendment prohibits force that

---

8 Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam).

> offends "contemporary standards of decency,"
> regardless of whether "significant injury is evident,"
> though the extent of injury may shed light on the
> amount of force applied or "whether the use of force
> could plausibly have been thought necessary."
> Wilkins, 559 U.S. at 37 (citation and internal
> quotation marks omitted).

Id. at 1265-66; see also McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). In determining whether an officer's use of force was applied maliciously and sadistically for the purpose of causing harm, courts consider five distinct factors:

> (1) the extent of injury; (2) the need for application of
> force; (3) the relationship between that need and the
> amount of force used; (4) any efforts made to temper
> the severity of a forceful response; and (5) the extent
> of the threat to the safety of staff and inmates, as
> reasonably perceived by the responsible officials on the
> basis of facts known to them.

Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986); Hudson, 503 U.S. at 7). When considering these factors, courts "must also give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)).

Notably, a lack of serious injury, while not dispositive, is relevant to the inquiry. Wilkins, 559 U.S. at 38; Smith v. Sec'y, Dep't of Corr., 524 F. App'x

511, 513 (11th Cir. 2013) (per curiam). The United States Supreme Court has

explained:

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Ibid.[9] (quoting Whitley, supra, at 321). The extent of injury may also provide some indication of the amount of force applied. . . . An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).[10]
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

Wilkins, 559 U.S. at 37-38. The Eleventh Circuit has stated:

> A plaintiff who suffers only de minimis injury does not necessarily lack a claim for excessive force under § 1983. Stephens,[11] 852 F.3d at 1328 n.33; Saunders v. Duke, 766 F.3d 1262, 1270 (11th Cir. 2014). However, the resulting injuries can be evidence of the kind or degree of force that was used by the officer. See Crocker v. Beatty, 995 F.3d 1232, 1251 (11th Cir. 2021).

---

[9] Hudson, 503 U.S. at 7.

[10] See Johnson, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

[11] Stephens v. DeGiovanni, 852 F.3d 1298 (11th Cir. 2017).

Charles v. Johnson, 18 F.4th 686, 700 (11th Cir. 2021).

Here, Blake fails to state a claim of excessive force against Defendants Baker and Carey. In his SAC, Blake alleges that when Defendant Baker was trying to remove his right-hand restraint, Blake "snatched his arm back through the aperture." SAC Attachment at 2. He then asserts that he and Defendant Baker "struggled with each other" until Defendant Carey "intervened by spraying [Blake] with chemical agents." Id. Viewing these allegations in the light most favorable to Blake, one cannot reasonably infer that Defendant Baker's and Defendant Carey's actions were motivated by anything more than a need to restore discipline. See, e.g., Bouvier v. City of Covington, Ga., No. 23-11410, 2023 WL 8015792, at *4 (11th Cir. Nov. 20, 2023) (finding officers' ten-second application of a taser to a physically resistant plaintiff was not excessive as it was not "wholly disproportionate to the situation").

In his Response, Blake again admits he disobeyed Defendant Baker's attempt to remove his hand restraint and pulled his arm away from Defendant Baker's grasp. Response at 6. But he does not mention Defendant Carey's alleged use of chemical agents. And, for the first time, he states that Defendant Baker grabbed and bent his right arm "as if he was attempting to break" it; and Defendant Carey "reacted by grabbing at [Blake's] [left] arm and pulling as well." Id. Blake also maintains that since he was already secured inside his

cell, his possession of the handcuffs and "security keys" presented no safety risk to prison authorities; and thus, while the amount of force Defendants Baker and Carey used "seem[ed] minimal," it was excessive and unnecessary. Id. But as stated, the Court afforded Blake two opportunities to amend his allegations, and his Response to the Motion is not the proper avenue to supplement or add to the claims asserted in his SAC. See Regalado, No. 22-12265, 2023 WL 239989, at * 1; Huls, 437 F. App'x at 832 n.5; Gilmour, 382 F.3d at 1315. As such, the Court will not consider the new facts and arguments Blake attempts to raise for the first time in his Response. Blake fails to state a plausible excessive force claim against Defendants Baker and Carey, and Defendants' Motion is due to be granted as to this argument.

Conditions of Confinement

Blake also appears to allege that following his decontamination shower, unnamed officials moved him to a cell covered in chemical agents and denied him "healthy comfort items" for a few days. SAC Attachment at 2. Although Defendants do not reference these allegations as being a separate claim, to the extent that Blake is asserting an Eighth Amendment claim of deliberate indifference to the conditions of his confinement, he fails to state such a claim. Indeed, Blake fails to allege sufficient facts to connect any Defendant to his allegations about being placed in a cell covered in chemical agents. Also, the circumstances Blake describes about being denied "healthy comfort items" for

a few days, fail to demonstrate conditions that pose a risk of serious damage to his health or safety. And he fails to allege facts showing any named Defendants knew of an excessive risk to his health and safety. See Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 865 (11th Cir. 2008) ("The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety."). Thus, liberally construing Blake's allegations as raising a claim regarding the conditions of his confinement following his decontamination shower, Blake has failed to state a plausible claim for relief based on those facts. And any such claim is due to be dismissed.

### d. Remaining Arguments

Because the Court finds Defendants' Motion is due to be granted as to their argument that Blake fails to state any plausible claim for relief, the Court need not address Defendants' qualified immunity or compensatory and punitive damages arguments.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The **Clerk** is directed to correct the docket to reflect the accurate spelling for the following listed Defendants – "H. Coovey" to "H. Carey" and "E. Becker" to "E. Baker."

2.     Defendants' Motion to Dismiss (Doc. 19) is **GRANTED**.

34

3.    All claims against all Defendants and this case are **DISMISSED with prejudice**.

4.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of January, 2025.

MARCIA MORALES HOWARD

**MARCIA MORALES HOWARD**
United States District Judge

Jax-7

C:    Kevin Lamar Blake, #X83762
      Counsel of record